## J. L. CLEMMENS *v.* J. S. CONNELL, ET AL.

**Mortgage Foreclosure—Liens—Attorney Fees—Rents.**

In a mortgage foreclosure where there are second liens and their holders are parties and all matters are adjudicated, the priorities of liens settled and the property sold and the second lien holders whose securities are inadequate make no effort to have a receiver appointed to collect rents, they have no cause of action against either the mortgagor or mortgagee for such rents.

**Attorney's Fees.**

An undertaking to pay an attorney's fee in the event the creditor is compelled to sue, is in the nature of a penalty against which the debtor will be relieved in equity. However, if the debtor pays such fee he cannot recover it back.

APPEAL FROM SHELBY CIRCUIT COURT.

January 14, 1875.

OPINION BY JUDGE COFER:

Whatever may have been the rights of the appellant on the liability of Mrs. Clayton in relation to the rent of the mortgaged premises, it seems to us that it is too late after judgment of foreclosure to litigate that question. The appellant knew before the judgment was rendered, all that he now knows affecting Mrs. Clayton's liability. It may be true that he did not know before a sale was made that it would not realize enough to pay both the mortgage debts and the amount for which he had a lien, but he had a right, as the holder of a junior lien, to contest the whole or any part of the mortgage debts, or to urge any equitable reasons that may have existed for an abatement in the amount due the prior incumbrance, and it was his duty to do so before judgment, unless he intended to take the risk of realizing the whole of his debt out of that part of the proceeds of the sale that remained after satisfying the mortgages. Having seen proper to stand by with a knowledge of all the facts in regard to the charge now asserted against Mrs. Clayton, until a sale was made and confirmed, he must abide the consequences.

But if this was not the case, we see no legal or equitable ground upon which to charge Mrs. Clayton with the rents. All the parties were before the court in time for the appellant to have caused the land to be put into the hands of a receiver, whereby the rents, the loss of which he complains, could have been saved. Mrs. Clayton would have been liable, if she had taken possession as she had a right to do; but we are wholly unable to perceive upon what ground she was either legally or morally bound to take possession in order to secure a fund for the appellant, which it was in his power, as much as in hers, to secure for himself. She was already secured, and did not need either to enter the possession of land she may not have been in condition to use or control, or to assume the responsibility of making it yield the rent for which she would have been compelled to account. And especially is this true in view of the fact that, although she had a prior right to the rents, the appellant, having all the parties before the court, could have procured an order committing the land to the hands of a receiver. Indeed, he is the only person who was certainly in a condition to have compelled both Connell and his tenant to surrender.

It is not by any means certain that Mrs. Clayton could have possessed herself of the land without the aid of the court. It is certain that she could not lawfully have done so until sometime in March, 1872, and it is, to say the least, doubtful whether she could have gotten possession after that without a resort to legal proceedings. Was she bound to do this for the benefit of the appellant? Most clearly not. The appellant has already, by his suit, subjected the property to the control of the court; and we are inclined to the opinion that Mrs. Clayton not only had no right to take control of the property, but that the appellant was the only person who could have compelled its surrender. It is true Mrs. Clayton had the legal title and prior right to the possession and to the profits; but it is also true that after suit brought by an incumbrancer, the property was under the control of the court, and the rights of the parties were all subordinate to the power of the chancellor to make such orders as were demanded by the interest of all; and if Mrs. Clayton had moved on her own account for the appointment of a receiver, it is clear that her motion would have been denied, because she could not have shown that the security for her debt was probably, or even possibly insufficient. Sec. 329, Civil Code.

After the suit was commenced and the parties were summoned, if Connell or his tenant were in possession, the chancellor alone should

have been applied to, and as the appellant was the only person in danger of suffering loss on account of the insufficiency of the property as a security for the debt, he should have taken action, if he desired to secure the rents. If he had applied for an order directing the receiver to take charge of and rent the property, and Mrs. Clayton had resisted, the authorities cited by the appellant would have been applicable, but none of them hold a prior lien liable to a junior incumbrancer for mere neglect to take possession.

The sale of the mortgaged property was a satisfaction of the debts of the mortgagees against Connell, and discharged him from liability to them as completely as if he had paid their debts in money; and if any usury was embraced in either debt, the person to whom it was paid became liable to Connell, and not to the appellant, who, being a creditor of Connell, had no right to compel the payment to him of usury due to Connell. It is true appellant alleges that he did not know until after the sale had been confirmed that there was any usury in the debts, the effect of which is that he did not know it until the usury had been paid by Connell, and he thereby acquired a right of action against the person receiving it to recover it back. But the evidence fails to sustain the allegation that the existence of the usury was not discovered until after the judgment was rendered, and even conceding the appellant's right to recover it after judgment, if, in fact, he did not sooner discover its existence, he fails to make out a case for relief on this ground.

As we have heretofore decided, an undertaking to pay an attorney's fee in the event the creditor is compelled to resort to legal proceedings for the collection of the debt is in the nature of a penalty, against which the debtor will be relieved in equity; but it does not thence follow that if the debtor pays the stipulated fee that he can recover it back, or that any other condition of a common debtor can avoid such an obligation by a mere informal objection to the judgment without pleading, or a previous intimation in any form that he resists the payment, when no objection is made by the debtor.

But as we have before said, the appellant is not a creditor of Connell. Connell owes him nothing, and as the appellant bought subject to the mortgages which contained stipulations to pay attorney's fees, and as it is neither unlawful nor immoral to pay or to receive such fees, there is no hardship in the treating these undertakings of Connell to pay as valid against the appellant, especially as Connell makes no objection, and the appellant made none in any such way as to

raise the question of the validity of the agreement between the mortgagees and himself.

Wherefore the judgment is *affirmed* on the original appeal, and on the cross-appeal of Mrs. Clayton. The judgment on the supplemental petition is *reversed*, and the cause is remanded with directions to dismiss the supplemental petition as to her with costs.

*Cummins & Willis, for appellant.*
*Caldwell, Harwood, for appellees.*